AES:HDM
F. #2018R001271

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

SHIMON ROSENFELD,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
ARREST WARRANT
(18 U.S.C. § 1343)

21-MJ-96 (CLP)

EASTERN DISTRICT OF NEW YORK, SS:

      JULIE AMATO, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

      In or about and between May 2014 and March 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SHIMON ROSENFELD did knowingly and intentionally devise a scheme and artifice to defraud one or more investors and potential investors, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate commerce, one or more writings, signs, signals, pictures and sounds.

      (Title 18, United States Code, Section 1343)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been involved in the investigation of numerous cases involving wire fraud, mail fraud and money laundering. The FBI, in conjunction with the United States Secret Service ("USSS"), has been investigating a fraudulent scheme by the defendant SHIMON ROSENFELD, a resident of Brooklyn, New York. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; my review of summaries of interviews with witnesses, including victims; a review of records, including email communications between ROSENFELD and his victims, bank records and brokerage records; and discussions with other law enforcement officials.

2. Between in or about May 2014 and March 2018, the defendant SHIMON ROSENFELD perpetrated a fraudulent scheme by soliciting and receiving approximately at least $4 million from various individuals (collectively, the "Victims") based on fraudulent misrepresentations. Specifically, ROSENFELD induced the Victims to invest the Victims' money with ROSENFELD based, in part, on representations that ROSENFELD would use the Victims' money for real estate transactions in which ROSENFELD would purchase real estate and sell it to a prospective buyer at a higher price, also referred to as "flipping" the property. ROSENFELD further told the Victims that he would split the profits from the real estate transactions with the Victims. In actuality, however,

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

ROSENFELD did not use the Victims' money for real estate transactions. Instead, ROSENFELD misappropriated the money and used it in part to trade in securities. ROSENFELD also falsely told the Victims that there were problems with the real estate transactions, such as title or appraisal issues, in order to explain why no real estate had been purchased. ROSENFELD communicated with the Victims in person, by telephone and through email.

3. For example, the defendant SHIMON ROSENFELD solicited and received approximately $2 million from an individual whose identity is known to your affiant ("Victim 1"), for three purported real estate transactions. First, between in or about May 2014 and June 2014, ROSENFELD solicited and received approximately $300,000 from Victim 1 for a purported real estate transaction near Philadelphia, Pennsylvania. ROSENFELD did not use that $300,000 for a real estate transaction and misappropriated the money. Second, between in or about February 2015 and June 2017, ROSENFELD solicited and received approximately $1,025,000 from Victim 1 for a purported real estate transaction involving a property in Greenpoint, Brooklyn. ROSENFELD did not use that $1,025,000 for a real estate transaction and misappropriated the money. Third, ROSENFELD solicited and received approximately $700,000 from Victim 1 for a purported real estate transaction near Philadelphia, Pennsylvania (the "Philadelphia Deal"). On or about March 30, 2017, Victim 1 emailed ROSENFELD to confirm the details of the Philadelphia Deal. In that email, Victim 1 stated that he/she had given ROSENFELD $500,000 in December 2015 and was providing an additional $150,000 to ROSENFELD for the Philadelphia Deal. Victim 1 also noted that once the Philadelphia Deal closed, it was his/her understanding that he/she would receive back the principal plus $500,000 in profit. In response, ROSENFELD stated,

"Confirmed." Victim 1 later provided an additional $50,000 to ROSENFELD for the Philadelphia Deal in or about February 2018.

4. After receiving Victim 1's money, the defendant SHIMON ROSENFELD provided a series of excuses for not having completed the real estate transactions. For example, on or about August 15, 2017, Victim 1 emailed ROSENFELD asking about any "updates on the flips." ROSENFELD responded: "I am working on the updates. Want to be accurate and comfortable with the info. Ned [sic] a little more time." Victim 1 further replied that he wanted "to get these closed by the end of the month." ROSENFELD responded: "I am doing that!!!!!! August is a tuff [sic] month to get things done, especially later part." ROSENFELD, however, never closed any real estate transactions that were supposed to be closed using Victim 1's funds.

5. On or about April 25, 2018, the defendant SHIMON ROSENFELD told Victim 1 and another individual in person that, in sum and substance and in part, ROSENFELD had not used Victim 1's money for real estate transactions but instead had used it to purchase and trade securities.

6. I have reviewed records for bank accounts held by the defendant SHIMON ROSENFELD, which show wire transfers from various victim bank accounts to bank accounts controlled by ROSENFELD. I have also reviewed ROSENFELD's brokerage records, which show incoming wire transfers from ROSENFELD's bank accounts. For example, on or about February 7, 2018, Victim 1 wired $50,000 to a bank account controlled by ROSENFELD (the "Rosenfeld Account"). On or about February 7, 2018, ROSENFELD transferred $49,000 from the Rosenfeld Account to ROSENFELD's brokerage account at TD Ameritrade (the "Rosenfeld Brokerage Account"). On or about

February 9, 2018, ROSENFELD executed multiple securities transactions using the funds in the Rosenfeld Brokerage Account.

7. In addition to Victim 1, the defendant SHIMON ROSENFELD induced investments from additional victims based on similar false representations. For example, in or about May 2015, ROSENFELD told an individual whose identity is known to your affiant ("Victim 2") that ROSENFELD had a property investment deal in Crown Heights, Brooklyn (the "Crown Heights Deal"). Victim 2 invested approximately $150,000 in the Crown Heights Deal. According to Victim 2, ROSENFELD kept coming up with excuses and stories about why the Crown Heights Deal was delayed. These were false statements. Instead of investing the money in real estate transactions, ROSENFELD used Victim 2's funds in part to trade securities for himself. On or about May 15, 2015, Victim 2 wired $100,000 into an account controlled by ROSENFELD. That same day, on or about May 15, 2015, ROSENFELD transferred $78,100 from an account controlled by ROSENFELD to the Rosenfeld Brokerage Account. On or about May 18, 2015, ROSENFELD executed multiple securities transactions using the funds in the Rosenfeld Brokerage Account. In total, Victim 2 sustained more than $500,000 in losses in connection with ROSENFELD's misrepresentations.

8. The defendant SHIMON ROSENFELD also defrauded another individual whose identity is known to your affiant ("Victim 3"). In 2016, ROSENFELD induced Victim 3 to invest approximately $590,000 in purported real estate investment opportunities on behalf of Victim 3 and his/her family. Instead of investing the money in real estate transactions, ROSENFELD used Victim 3's funds in part to trade securities for himself. For example, Victim 3 provided a $100,000 check to ROSENFELD, which was

deposited into the Rosenfeld Account on or about May 12, 2016. On or about May 13, 2016, ROSENFELD transferred $100,000 from the Rosenfeld Account to an intermediary account controlled by ROSENFELD. Subsequently, ROSENFELD transferred $93,000 from the intermediary account to the Rosenfeld Brokerage Account. On or about May 16, 2016, ROSENFELD executed multiple securities transactions using the funds in the Rosenfeld Brokerage Account. In or about April 2018, ROSENFELD came to Victim 3's place of business and told Victim 3 that he had lost all of Victim 3's money.

9. The defendant SHIMON ROSENFELD also defrauded another individual whose identity is known to your affiant ("Victim 4"). In or about July 2015, ROSENFELD induced Victim 4 to invest approximately $375,000 in a purported real estate investment opportunity. Instead of investing the money in a real estate transaction, ROSENFELD used Victim 4's funds in part to trade securities for himself. On or about July 16, 2015, Victim 4 wired $250,000 to the Rosenfeld Account. That same day, on or about July 16, 2015, ROSENFELD transferred $249,000 from the Rosenfeld Account to an intermediary account controlled by ROSENFELD and then transferred $147,000 to the Rosenfeld Brokerage Account. After transferring these funds, ROSENFELD executed multiple securities transactions using the funds in the Rosenfeld Brokerage Account. In total, Victim 4 sustained approximately $900,000 in losses in connection with ROSENFELD's misrepresentations.

WHEREFORE, your deponent respectfully requests that the defendant SHIMON ROSENFELD be dealt with according to law. Because public filing of this document could result in a risk of flight by ROSENFELD, as well as jeopardize the

government's ongoing investigation, your deponent respectfully requests that this complaint, as well as any arrest warrant issued in connection with this complaint, be filed under seal.

*[signature]*
JULIE AMATO
Special Agent, Federal Bureau of Investigation

Special Agent Julia Amato attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(b)(2)(A) on January 25, 2021

*[signature: Cheryl L. Pollak]*
THE HONORABLE CHERYL L. POLLAK
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK